**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OREGON COLUMBIA BRICK MASONS
JOINT APPRENTICESHIP TRAINING
COMMITTEE; OREGON-COLUMBIA
CEMENT MASONS JOINT
APPRENTICESHIP TRAINING COMMITTEE,
         *Plaintiffs-Appellants,*

v.

DAN GARDNER, in his capacity as
Oregon Labor Commissioner and
Oregon State Apprenticeship and
Training Council Chairperson; JOHN
MOHLIS; VICKY L. BACON; KATHRYN
J. MATTIMORE; RONALD S. SHERMAN;
CONSTANCE ASHBROOK; ED J.
GORMLEY; CHET CARUTHERS; STEPHEN
SIMMS, Esq.; LARRY JONES, each in
their capacity as members of the
Oregon State Apprenticeship and
Training Council,
         *Defendants-Appellees.*

No. 03-35864

D.C. No.
CV-02-01711-JJ

OPINION

Appeal from the United States District Court
for the District of Oregon
John Jelderks, Magistrate Judge, Presiding

Argued and Submitted
March 7, 2005—Portland, Oregon

Filed May 22, 2006

Before: Stephen Reinhardt, Marsha S. Berzon, and
Jay S. Bybee, Circuit Judges.

5557

Opinion by Judge Berzon

**COUNSEL**

John Spencer Stewart, Robert B. Coleman, & Matthew A. Wand, Stewart Sokol & Gray LLC, Portland, Oregon, for the plaintiffs-appellants.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, & Erika L. Hadlock, Assistant Attorney General, Salem, Oregon, for the defendants-appellees.

**OPINION**

BERZON, Circuit Judge:

We consider whether an Oregon prerequisite for state recognition of a proposed apprentice training committee — that it be "necessary to serve the needs of the various apprenticeable occupations," OR. REV. STAT. § 660.135(1), a requirement known as the "needs" requirement — is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.

**BACKGROUND**

"Since the founding of the American republic, states have regulated training programs for individuals seeking to enter skilled crafts, in order to prevent their exploitation by employers." *Assoc. Builders & Contractors of S. Cal., Inc. v. Nunn*, 356 F.3d 979, 982 (9th Cir. 2004). Oregon has since 1931 promoted apprentice training programs by establishing a registration system for programs that meet specified criteria. *See* 1931 OR. LAWS 138. Oregon does not, however, mandate that employers hire only registered apprentices. Instead, "[f]or building contractors, a major benefit of hiring registered apprentices is that they can pay them a special rate for work that they perform on public construction projects," *Nunn*, 356 F.3d at 982, typically lower than the prevailing wage established by Oregon law. *See* OR. REV. STAT. § 660.142(1).[1] Con-

---

[1]The statute provides, in relevant part:

    (1)  No employer shall pay a registered apprentice at a rate less than that obtained by applying the schedule, set forth in the applicable standards, at the apprentice's level of apprenticeship, to the journeyman hourly rate of wage currently in effect for journeymen in the occupation for which the apprentice is being trained, as determined by the appropriate local joint committee.

    (2)  The journeyman hourly wage rate shall be the average hourly wage currently being paid by employers participating in

tractors may pay this lower rate only if they hire apprentices from registered programs. *Id.* § 660.142(2).

In Oregon, the registered programs are run by "local joint committees," *id.* § 660.135, in accordance with standards approved by the Oregon State Apprenticeship and Training Council (Council). *Id.* § 660.137. At the heart of this case is the standard prescribing that, "[i]n each locality where apprentices are employed, there shall be formed as many local joint committees *as are necessary to serve the needs of* the various apprenticeable occupations." *Id.* § 660.135(1) (emphasis added). This needs requirement limits the number of State-recognized apprenticeship programs in a given geographic area.

The "joint" aspect of the local joint committees is that they "consist of an equal number of representatives of employers and employees." *Id.* § 660.135(2). Employee representatives on "joint committees" need not be members of a labor organization or a collective bargaining unit. If there is no collective bargaining agreement that "covers the trade or occupation that is the subject of the apprenticeship or training program administered by the local joint committee," an "employee representative must be, or have been, a skilled practitioner of the particular trade or occupation that is the subject of the apprenticeship or training program administered by the local joint committee." *Id.* § 660.135(5).

Rules issued by Oregon's Bureau of Labor and Industries further regulate joint apprenticeship committees. Relevant to this case is one that explains the application of the needs requirement as follows:

a program to their skilled workers, that is, to those employees with demonstrated knowledge, experience and proficiency in that trade or occupation who are currently performing the type of work for which the apprentice is to be trained.

OR. REV. STAT. § 660.142.

> The Council will approve the creation of a new local joint committee, in an area already served by a committee in the same trade or craft, only if the applicant for the new program can first demonstrate to the satisfaction of the Council by a preponderance of evidence that the existing program fails or refuses to address valid and legitimate needs of the applicant.

OR. ADMIN. R. 839-011-0084(3).[2] Another pertinent regulation requires that, "[a]ll employers and their apprenticeable employees shall be afforded the opportunity to participate, on a non-discriminatory basis, in existing programs." OR. ADMIN. R. 839-011-0084(2).

## FACTUAL AND PROCEDURAL BACKGROUND

In this case, the Oregon Columbia Brick Masons Joint Apprenticeship Training Committee and the Oregon Columbia Cement Masons Joint Apprenticeship Training Committee, two apprenticeship training committees not registered by the Council, seek a declaratory judgment that Oregon's needs requirement for the establishment of new registered apprenticeship training committees is preempted by ERISA. The two committees initially sought approval by the Council in June 2000. The Council's Standards Review Subcommittee recommended against Council approval three times between then and September 20, 2001, when the Council finally denied the plaintiffs' application.

---

[2]This administrative rule was amended, effective August 23, 2005, to replace the general requirement that an applicant demonstrate "that the existing program fails or refuses to address valid and legitimate needs" with a requirement that the application satisfy a number of set criteria. *See* OR. ADMIN. R. 839-011-0084 (2005). Because the amended rule does not apply retroactively, the relevant regulation is the one in force at the time appellants submitted their application for new apprenticeship training committees. All citations in this opinion to the administrative rule are to the former version, unless otherwise noted.

In reviewing the appellants' application for new registered apprenticeship training committees, a Council subcommittee considered whether existing committees could meet the needs identified by appellants for their proposed programs. The existing registered apprenticeship committees represented that they could address all of the identified needs by incorporating some of the appellants' proposed curriculum into their programs. They also offered appellants an opportunity to participate in curriculum development. Ultimately, the subcommittee recommended that the Council deny approval because of perceived deficiencies in appellants' proposed curriculum. The subcommittee also doubted that the existing registered apprenticeship committees could not or would not meet appellants' stated needs.

Before the full Council there was extensive debate on the appellants' application, but the application was ultimately rejected. Appellants argued, first, that they had an "unmet need" related to "philosophical differences," because the existing registered apprenticeship training committees included union members. The Council did not recognize this "philosophical difference" as an "unmet need," reasoning that an Oregon administrative rule mandates non-discriminatory access to existing programs, *see* Or. Admin. R. 839-011-0084(2), and thus that it could not sanction a program premised on excluding union-affiliated participants.

Second, appellants argued that "cost efficient training" was a need unmet by the existing programs. The Council was not persuaded by this position, as appellants "refused to fully document costs or provide cost justifications for their training cost claims, while at the same time acknowledging that all known costs were not included in the original estimates provided to the Subcommittee and Division staff."

After the Council denied their application, the appellants brought this declaratory action in federal court. The plaintiffs sought a judgment declaring that Oregon Revised Statute

§ 660.135(1), delineating the needs requirement, and Oregon Administrative Rule 839-011-0084 are preempted by ERISA, and also sought related injunctive relief. Both appellants and appellees presented declarations concerning the factual background of appellants' rejected application for registration as apprenticeship training committees. In addition, appellees offered undisputed evidence that Oregon's registered apprenticeship training programs include both programs supported by independent funds created exclusively for that purpose and others supported by alternate arrangements not involving the creation of a separate fund. According to an affidavit from Stephen Simms, a member of the Council, at least sixty-eight apprentice training committees maintain funds for the purpose of financing their training programs, and at least sixty-one do not. The unfunded committees "are supported either directly by the participating employer or employers or have made contractual arrangement for the operation of their programs."

On cross-motions for summary judgment, the magistrate judge granted summary judgment to the appellees. This appeal ensued.

## DISCUSSION

At the core of this case is ERISA's "broadly worded preemption provision." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990). It provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added).

**[1]** In *California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316 (1997), the Supreme Court considered whether ERISA preempts a California law, similar to the Oregon statute, requiring contractors of state public works projects to pay the prevailing wage unless the contractor hires apprentices from approved programs. The Court used a two-part inquiry in "apply[ing] the 'unhelpful text' of ERISA's pre-emption provision," *id*. at 324: First, does the law "refer to" ERISA plans? Second, if not, does the law have an impermissible "connection with" ERISA plans? *Id*. at 324-35; *see also Nunn*, 356 F.3d at 984-86 (applying the *Dillingham* criteria).

Appellants maintain that we should not apply the *Dillingham* analysis afresh to this case, as we have already decided, in *Associated General Contractors v. Smith*, 74 F.3d 926 (9th Cir. 1996), that a needs requirement for state registration of an apprenticeship program is preempted by ERISA. *Smith*, however, relied substantially on our overturned decision in *Dillingham Construction N.A., Inc. v. County of Sonoma*, 57 F.3d 712 (9th Cir. 1995), *rev'd*, 519 U.S. 316. *See Smith*, 74 F.3d at 929-30. Furthermore, the Supreme Court, in reversing our decision in *Dillingham*, substantially altered the ERISA preemption analysis for apprenticeship plans. Consequently, we cannot rely on *Smith*, but instead must apply the ERISA preemption analysis developed by the Supreme Court in *Dillingham* to the Oregon needs requirement. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) (holding that when intervening Supreme Court case law is clearly irreconcilable with a prior circuit decision, a panel of this court is "bound by the later and controlling authority, and should reject the prior circuit opinion").

## I.  "REFER TO"

*Dillingham* held, first, that California's prevailing wage law did not "refer to" ERISA plans because approved apprenticeship programs in California were "not necessarily . . .

ERISA plans." 519 U.S. at 325. The Court identified as critical to its analysis the consideration that among California's approved programs were both joint apprenticeship committees, i.e., those "sponsored by the collective efforts of management and organized labor,"[3] that must maintain ERISA trust funds, and those "maintained by a single employer, [whose] costs can be defrayed out of that employer's general assets." *Id*. at 325-26. This "funded/unfunded distinction," *id*. at 327, was critical to *Dillingham*'s holding that California's approved apprenticeship programs do not "refer to" ERISA plans.

This "funded/unfunded distinction" first arose in *Massachusetts v. Morash*, 490 U.S. 107 (1989). In *Morash*, the Court, interpreting the term "employee welfare benefit plan" in ERISA, *see* 29 U.S.C. § 1002(1), "recognized a distinction between vacation benefits paid out of an accumulated fund and those paid out of an employer's general assets." *Dillingham*, 519 U.S. at 326. "[C]ompelled by ERISA's object and policy," the Court concluded that "the policy at issue in *Morash*, whereby vacation benefits were paid out of general assets," was not an ERISA "employee welfare benefit plan." *Id*.

In considering California's approval requirement for apprenticeship training committees, *Dillingham* relied on the factual record concerning whether California's approved apprenticeship programs maintained ERISA-governed trust funds. Evidence indicated that "California had 175 joint apprenticeship programs and 13 'unilateral' ones." *Id*. at 327 n.5. Although the record did not indicate whether "some of the 13 unilateral programs [had] separate funds," *Dillingham* emphasized that "[n]o party . . . ha[d] *established* that *all* pro-

---

[3]The Court's definition of a "joint apprenticeship training program" cited California law as recognizing only representatives of collective bargaining units as employee representatives. *See Dillingham*, 519 U.S. at 325 (citing Cal. Lab. Code §§ 3075, 3076).

grams d[id]." *Id*. (first emphasis added). The Court concluded on this basis that the prevailing wage law "function[ed] irrespective of . . . the existence of an ERISA plan." *Id*. at 328 (citation and internal quotation marks omitted).

Similarly, in *Nunn*, we considered whether a California regulation governing the compensation paid registered apprentices working on private construction projects refers to ERISA plans. 356 F.3d at 984-86. We noted that there were twenty-eight state-approved unilateral apprenticeship programs, *id*. at 983, and that "[i]n [the pertinent regulation] there is no specific provision that makes ERISA plans essential to its operation or that acts immediately or exclusively upon ERISA plans." *Id*. at 984. We concluded that the statute in question "survives Associated Builders' challenge under this 'reference to' prong of ERISA preemption analysis." *Id*.

**[2]** The question that we must answer with reference to Oregon's needs requirement, then, is whether it "is indifferent to the funding, and attendant ERISA coverage, of apprenticeship programs."[4] *Dillingham*, 519 U.S. at 328; *see also Nunn*, 356 F.3d at 984. Appellants argue that although many Oregon apprenticeship programs do not in fact maintain trust funds, they are legally required to do so, either by the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141-187, or by ERISA itself. They maintain that if either argument is correct, then the needs requirement "refers to" ERISA plans and is, therefore, preempted. We disagree.

---

[4]Following oral argument, appellants directed our attention to an administrative decision from the Department of Labor that held that California's needs requirements was inconsistent with a different federal law, namely the National Apprenticeship Act of 1937, 29 U.S.C. § 50. *See U.S. Dep't of Labor, Office of Apprenticeship Training, Employment, & Labor Servs. v. Cal. Dep't of Indus. Relations*, Case No. 2002-CCP-00001 (Dep't of Labor Apr. 22, 2005), http://www.oalj.dol.gov/Decisions/ALJ/CCP/2002/ EMPLOYMENT_and_TRAIN_v_CALIFORNIA_DEPARTMEN_2002C CP00001_(APR_22_2005)_082616_CADEC_SD.PDF. That decision, however, did not concern whether a needs requirement is preempted by ERISA and thus does not inform our decision here.

## A.   LMRA

**[3]** Section 302(a) of the LMRA provides:

It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value —

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization,[5] or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce . . . .

29 U.S.C. § 186(a). This general prohibition is not applicable, however, "with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of . . . defraying costs of apprenticeship or other training programs." *Id.* § 186(c)(6). Thus, while an employer may not pay any money directly to a labor organization or other employee representative, an employer may con-

---

[5]A "labor organization" is defined by 29 U.S.C. § 152(5), which provides:

The term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

tribute to an apprenticeship trust fund established by such an organization or representative. If a trust fund is established to comply with the LMRA, then ERISA governs the implementation and governance of that fund. *See Dillingham*, 519 U.S. at 326.

In general, the purpose of § 302(a) of the LMRA is to prevent "corruption of collective bargaining through bribery of employee representatives by employers, . . . extortion by employee representatives, and . . . the possible abuse by union officers of the power which they might achieve if welfare funds were left to their sole control." *Arroyo v. United States*, 359 U.S. 419, 425-26 (1959). Its coverage extends not just to official bargaining representatives but to "any person authorized by the employees to act for them in dealing with their employers." *United States v. Ryan*, 350 U.S. 299, 302 (1956).

**[4]** The appellants maintain that to comply with the LMRA, any approved Oregon apprenticeship training committee *must* establish a trust fund to defray the costs of apprenticeship training, even if its employee members are *not* members of collective bargaining units or traditional labor organizations. They point to no evidence, however, that any Oregon apprenticeship training committees not involving union representatives have in fact established LMRA trust funds, and we know from the record that at least sixty-one Oregon joint apprenticeships have not.

We seriously doubt the viability of the appellants' LMRA argument. The LMRA's core purpose is to prevent corruption of employee representatives who are chosen by, and have a statutory duty to represent the interests of, other employees. Although the apprenticeship training committees that include collective bargaining representatives clearly fall within the definition of "labor organization" set forth in 29 U.S.C. § 152(5), those committees on which the employee representatives are not collective bargaining representatives do not. Employee representatives on committees that do not involve

a collective bargaining agreement must only "be or *have been* a skilled practitioner in the particular trade or occupation that is the subject of the apprenticeship or training program administered by the local joint committee." OR. REV. STAT. § 660.135(5) (emphasis added); *see also* OR. ADMIN. R. 839-011-0074(1)(a)(B). Moreover, employee representatives need not be employees, and are chosen by the Council, not the employees themselves.[6] *See* OR. ADMIN. R. 839-011-0074. The local joint committees, consequently, are not necessarily "organization[s] . . . in which employees participate," 29 U.S.C. § 152(5), because none of its members need be "employees," *and* employees do not "participate" in the sense that they select the members of the committees. Further, such committees do not raise the concern of corrupting the discharge of duties by employee representatives selected under the processes of the National Labor Relations Act, 29 U.S.C. § 158, that is at the core of LMRA § 302.

**[5]** In sum, whether a government-mandated committee composed of government appointed individuals is a "labor organization" for purposes of the LMRA is at least highly debatable. In any event, there is no reason in this ERISA preemption case to decide an entirely hypothetical question concerning a separate statute, the LMRA. If the operation of some or all of the unfunded plans in Oregon is illegal under the LMRA, that is a matter for LMRA enforcement. *See* 29 U.S.C. § 186(d)-(e) (providing for criminal penalties and injunctive relief). Nothing in *Dillingham* suggests that its approach to the preemption question depends on the validity of funded or unfunded plans on independent legal grounds. Instead, after observing in passing that § 302(c)(6) of the LMRA requires a separate fund for joint apprenticeship com-

---

[6]The employers may nominate individuals to the committees, *see* OR. ADMIN. R. 839-011-0074(1)(a)(A), but the Council can disapprove nominees, *see* OR. ADMIN. R. 839-011-0074(1)(d). Also, if no individuals are nominated, "the Apprenticeship Representatives for the area may recommend members." OR. ADMIN. R. 839-011-0074(3).

mittees, *Dillingham* went on to identify "[t]he *existence* of that fund" — not whether the LMRA might be read to require the existence of a fund that in actuality does not exist — as the circumstance that "triggers ERISA coverage." 519 U.S. at 326 (emphasis added). The Court in *Dillingham* stated with emphasis that "an employee benefit program *not* funded through a separate fund is not an ERISA plan," once again concerning itself with on-the-ground actualities, not with disputed legalities. *Id.*

As noted above, the record indicates that not all of Oregon's apprentice training committees maintain trust funds: "[A]t least 68 [committees] are supported by a joint training trust fund. . . . [A]t least 61 . . . [committees] do not use a joint training trust fund, but are supported either directly by the participating employer or employers or have made contractual arrangement for the operation of their programs." The statute and regulations governing Oregon's needs requirement do not distinguish between funded and unfunded plans, but apply to all apprenticeship programs presented for approval. Thus, Oregon is "indifferent" to the outcome of the legal dispute between the parties as to whether § 302 of the LMRA does or does not require that the apprenticeship plans governed by the state-mandated local joint committees be funded. Either way, the Oregon statutory requirements will be the same.

**[6]** Given the Oregon statutory and regulatory language and the record in this case, the Oregon statutory scheme cannot be said to "refer to" ERISA plans. Rather, as in *Nunn*, "there is no specific provision that makes ERISA plans essential to its operation or that acts immediately or exclusively upon ERISA plans." 356 F.3d at 984. And, as in *Dillingham*, the Oregon statutes and regulations are "indifferent to the funding, and attendant ERISA coverage, of apprenticeship programs." 519 U.S. at 328.

**[7]** We conclude that Oregon's needs requirement does not "refer to" ERISA plans.

## B.  ERISA

Appellants' argument with regard to ERISA is somewhat similar. They ask us to hold that approved apprenticeship training committees in Oregon are covered by ERISA itself — without the LMRA trigger — because the committees meet ERISA's definition of an "employee welfare benefit plan," 29 U.S.C. § 1002(1). On that basis, they urge us to conclude that the Oregon statutes and regulations refer to ERISA plans.

ERISA's coverage provision states, in relevant part:

> [T]his subchapter shall apply to any *employee benefit plan* if it is established or maintained — (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both.

29 U.S.C. § 1003(a) (emphasis added). ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization,[7] or by

---

[7]An "employee organization" under ERISA means:

any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4).

both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.

*Id.* § 1002(1).

**[8]** Nothing in this statutory scheme *mandates* that employee welfare benefit plans be funded.[8] Conversely, as *Dillingham* holds, "an employee benefit [apprenticeship] program *not* funded through a separate fund is not an ERISA plan." 519 U.S. 326. Whether such an unfunded apprenticeship plan is established by an "employee organization" does not matter to whether it is an employee welfare benefit plan, just as it does not matter whether such an unfunded plan is established by "an employer engaged in commerce." 29 U.S.C. § 1003(a). Either way, only funded apprenticeship plans are covered; the sponsor is irrelevant.

**[9]** Some of Oregon's approved apprenticeship training committees are not *funded* apprenticeship plans, and § 1003(a) does not require that ERISA govern them. It follows, therefore, that the Oregon apprenticeship statutes and regulations do not "refer to" ERISA plans for the same reason earlier indicated — that the Oregon apprenticeship scheme, like the one in California, "is indifferent to the funding, and attendant ERISA coverage, of apprenticeship programs." *Dillingham*, 519 U.S. at 328.

---

[8]Employee pension benefit plans do have to be funded. 29 U.S.C. §§ 1081-82.

In sum, appellants' arguments that Oregon's needs requirement "refers to" ERISA plans fail. We turn, therefore, to whether Oregon's needs requirement has an impermissible "connection with" ERISA plans.

## II.   "CONNECTION WITH"

[10] The second step of the ERISA pre-emption inquiry is whether a challenged law has an impermissible "connection with" ERISA plans. For essentially the same reasons that the requisite "connection" was lacking in *Dillingham* and in *Nunn*, it is lacking here.

*Dillingham* observed that there is a "paucity of indication in ERISA and its legislative history of any intent on the part of Congress to pre-empt state apprenticeship training standards, or state prevailing wage laws that incorporate them." *Id.* at 331. Building on that observation, *Nunn* held that we must apply the "connection with" test with the understanding that "apprenticeship standards are a traditional area of state concern [and] Congress has explicitly encouraged continued state regulation of apprenticeship standards." 356 F.3d at 986.

[11] *Nunn* observed that "California does not prohibit apprenticeship training programs from operating without state approval, and employers are not required to hire apprentices from state-approved programs or indeed to hire any apprentices at all." *Id.* at 982. The same is true in Oregon. Only a program that seeks recognition from Oregon's State Apprenticeship and Training Council is subject to evaluation under Oregon's needs requirement. *See* OR. REV. STAT. § 660.135. Oregon's scheme does not require that all apprenticeship training programs be registered nor does it govern the functioning or internal organization of unregistered apprentice training committees. Indeed, appellants have existed and functioned in some fashion since 1986 without state approval. That appellants would prefer to attain state recognition because of the financial advantages state recognition offers

does not prevent them from training apprentices as they see fit without that recognition.

**[12]** The needs requirement does provide incentives for employers seeking to provide apprenticeship training opportunities to join existing programs. In this sense, it is quite similar to the state law at issue in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995). In *Travelers*, the Supreme Court considered whether ERISA preempted a New York statute that "require[d] hospitals to collect surcharges from patients covered by a commercial insurer but not from patients insured by a Blue Cross/Blue Shield plan, and . . . subject[ed] certain health maintenance organizations . . . to surcharges that var[ied] with the number of Medicaid recipients each enroll[ed]." 514 U.S. at 649. The Court concluded that "[a]lthough there is no evidence that the surcharges will drive every health insurance consumer to the Blues, they do make the Blues more attractive (or less unattractive) as insurance alternatives and thus have an indirect economic effect on choices made by insurance buyers, including ERISA plans." *Id.* at 659. This "indirect economic effect," basically a channeling mechanism, was insufficient to trigger ERISA preemption in *Travelers*. Oregon's needs requirement functions quite similarly: It makes participation in certain apprenticeship programs more attractive, but does not require such participation.

**[13]** In light of *Dillingham*, *Nunn*, and *Travelers*, we can discern no impermissible connection between Oregon's needs requirement and ERISA.

## CONCLUSION

**[14]** Oregon's needs requirement does not "relate to" ERISA. It neither "refers to" nor has an impermissible "connection with" ERISA plans. The needs requirement is therefore not preempted. The district court's decision is **AFFIRMED.**