Patrick BUCKLEY; Personal Watercraft,
Plaintiffs–Appellants,

v.

CITY OF REDDING, CALIFORNIA,
a Municipal Corporation,
Defendant–Appellee.

No. 93–17277.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 15, 1995.

Decided Sept. 13, 1995.

As Amended on Denial of Rehearing
and Suggestion for Rehearing
En Banc Nov. 30, 1995.*

* Judges Hug and Trott have voted to reject the suggestion for rehearing en banc, and Judge Alarcon has recommended rejection of the suggestion for rehearing en banc.

Sharon K. Sandeen, Downey, Brand, Seymour & Rowher, Sacramento, CA, for plaintiffs-appellants.

Walter P. McNeill, Law Offices of Walter P. McNeill, Redding, CA, and Bradley N. Webb, Wilke, Fleury, Hoffelt, Gould & Birney, Sacramento, CA, for defendant-appellee.

Before: HUG, ALARCON, and TROTT, Circuit Judges.

HUG, Circuit Judge:

In this case, we must determine whether the Federal Aid in Sport Fish Restoration Act ("the Act"), 16 U.S.C. §§ 777–777k, confers a right enforceable under 42 U.S.C. § 1983 to access certain waterways for specified recreational purposes. We hold that the Act does confer rights enforceable under section 1983 and, accordingly, reverse the district court's decision to the contrary.

## FACTS

The City of Redding, California, is located on the Sacramento River. In 1990, in response to a citizen petition, the City passed Ordinance No. 1944, prohibiting the operation of personal watercraft in the Sacramento River. *See* Redding Mun.Code § 10.26.040. The ordinance defines personal watercraft as:

1. The parties do not contest that Jet Skis, Sea Doo's and other personal watercraft affected by the Ordinance constitute motorboats within the

any motorized vessel which has an internal combustion engine powering a water-jet pump or a fully-covered propeller chamber as its primary source of motor propulsion, and which is designed to be operated by a person sitting, standing, or kneeling on the vessel rather than the conventional manner of sitting or standing inside the vessel. The term shall include those vessels commonly known as "Jet Skis," "Wet Bikes," "Surf Jets," and "Sea Doo."

Redding Mun.Code § 10.26.020(B).

In 1990, the State received funds under the Federal Aid in Sport Fish Restoration Act to help construct a boat launch facility on the river at South Bonnyview Road. To receive this funding, the state assented to the regulations and provisions of the Act. 50 C.F.R. § 80.3. The Act imposes a number of requirements upon fund recipients to further the purposes of the Act. 50 C.F.R. § 80.24 states that at least ten percent of the funds allocated to a state under the Act must be used "for recreational boating access facilities." This regulation further states:

All facilities constructed, acquired, developed, renovated, or maintained ... must be for the purpose of providing additional, improved, or safer access of public waters for boating recreation as part of the State's effort for the restoration, management, and public use of sport fish. Though a broad range of access facilities and associated amenities can qualify under the 10 percent provision, *power boats with common horsepower ratings must be accommodated,* and, in addition, the State must make reasonable efforts to accommodate boats with larger horsepower ratings if they would not conflict with aquatic resources management.

50 C.F.R. § 80.24 (emphasis added).

Patrick Buckley and the Personal Watercraft Industry Association ("PWIA") filed suit in state court arguing that the City's restriction of the Sacramento River violated the Act by unfairly singling out personal watercraft for differential treatment.[1] The

meaning of the Act. The United States Coast Guard classifies personal watercraft as Class A motorboats. 46 C.F.R. § 24.10–17. Likewise,

state court denied the plaintiffs' motion for summary judgment and the action was later dismissed voluntarily. Buckley and the PWIA then filed the present action in federal district court seeking to enforce this provision of the Act via 42 U.S.C. § 1983.[2] The district court refused to exercise pendent jurisdiction over the related state law claims and dismissed the plaintiffs' action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court held that the plaintiffs could not bring an action under section 1983 because the Act does not confer an enforceable federal right. The parties appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review *de novo* a district court's decision to grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1990).

## DISCUSSION

■ "Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2516, 110 L.Ed.2d 455 (1990). It is well settled that section 1983 "provides a cause of action for violations of federal statutes as well as the Constitution." *Id.* Section 1983 is broad, providing as a general rule, a mechanism to enforce constitutional or statutory rights, with two exceptions. A plaintiff will not be permitted to bring a section 1983 action if (1) the statute does not create an enforceable right, privilege, or immunity, or (2) Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme. *See, e.g., id.*

It is important to distinguish an action asserting a claim under section 1983 for violation of a federal statutory right from an action asserting a claim directly under a fed-

eral statute. In a section 1983 action, the plaintiff must establish that Congress created an enforceable statutory right. In a direct statutory action, on the other hand, the plaintiff must establish that Congress not only created an enforceable statutory right, but also that it established a private right of action to enforce the right. The Supreme Court illuminated this difference in a footnote in *Wilder,* 496 U.S. at 508–09 n. 9, 110 S.Ct. at 2517 n. 9:

> The test [in direct statutory actions] reflects a concern, grounded in separation of powers, that Congress rather than the courts controls the availability of remedies for violations of statutes. Because § 1983 provides an "alternative source of *express* congressional authorization of private suits," these separation-of-powers concerns are not present in a § 1983 case. Consistent with this view, we recognize an exception to the general rule that § 1983 provides a remedy for violation of federal statutory rights only when Congress has affirmatively withdrawn the remedy.

496 U.S. at 508–09 n. 9, 110 S.Ct. at 2517 n. 9 (citations omitted).

■ In this case, we must first determine whether the statute and its interpretive regulations create an enforceable federal statutory right. Buckley and the PWIA assert a statutorily created right of equal access for boats of common horsepower at boat launch facilities constructed under the Act. Several factors are relevant to determining whether a statute creates an enforceable right: (1) whether the statutory provision at issue was intended to benefit the putative plaintiff; (2) whether the provision creates a binding obligation on the state rather than a mere congressional preference; and (3) whether the asserted interest is not so amorphous as to be "beyond the competence of the judiciary to enforce." *See id.* 496 U.S. at 509, 110 S.Ct. at 2517 (quoting *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989) and

---

the California Attorney General recognized this classification in an opinion issued in response to the City of Redding's inquiry into the validity of its ordinance. *See* 74 Op. Att'y Gen. 174 (1991).

2. The parties have also filed a second action in state court, the proceedings of which have been stayed pending the outcome of this appeal.

*Pennhurst State School and Hosp. v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981)).

The City of Redding argues that the Supreme Court in *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), altered this well-established analytic framework. In *Suter,* the Court was confronted with whether one could enforce the "reasonable efforts" requirement of the Adoption Assistance Act through an action under section 1983, or directly under that act itself. The Court found that the act did not create an enforceable right and that the plaintiff could, therefore, not bring an action under section 1983. Because the act did not create an enforceable right, the Court had no trouble concluding that the act also did not impliedly create its own private right of action. *Suter,* 503 U.S. at 363–64, 112 S.Ct. at 1370.

In analyzing the section 1983 issue, the *Suter* Court reaffirmed the analytic framework set forth in its prior cases. *See id.* at 355–57, 112 S.Ct. at 1366–67 (acknowledging established approaches set forth in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Pennhurst State School and Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981); *Wilder, supra,* and *Golden State, supra*). The first inquiry is whether the act in question unambiguously confers an enforceable right. *Suter,* 503 U.S. at 357, 112 S.Ct. at 1366. The Court stressed the "unambiguous" component of this analysis and concluded, without explicitly applying the three-part inquiry, that "the 'reasonable efforts' language [of the Adoption Assistance Act] does not unambiguously confer an enforceable right upon the Act's beneficiaries." *Id.* at 363, 112 S.Ct. at 1370. Having so concluded, the Court then turned to the second part of the section 1983 analysis—whether enforcement was expressly or implicitly foreclosed. The Court noted that prior cases found congressional intent to foreclose remedies under section 1983 "where the statute itself provides a comprehensive remedial scheme which leaves no room for additional private remedies under

section 1983." *Id.* at 360 n. 11, 112 S.Ct. at 1368 n. 11. Because the Adoption Assistance Act did not create an enforceable federal right, the Court did not consider this issue, noting only that the act's own enforcement mechanisms, while insufficient to foreclose a section 1983 remedy in the context of an unambiguously conferred right, were sufficient to prevent the act's requirements from becoming a "dead letter." *Id.* at 360–61, 112 S.Ct. at 1368–69. This, apparently, is all that is required for foreclosure when the act in question is ambiguous as to whether it confers an enforceable right. *But see Wilder,* 496 U.S. at 520–21, 110 S.Ct. at 2523 (requiring "express provision or other specific evidence" of congressional intent to foreclose); *Wright,* 479 U.S. at 423–24, 107 S.Ct. at 770 (holding that Court will not "lightly" conclude that section 1983 is impliedly foreclosed).

■ Thus, the *Suter* opinion had only minimal impact on the analytic framework for determining whether a section 1983 action may be brought. The nature of the section 1983 remedy remains broad and may be used to remedy infringement of any unambiguously conferred right, privilege, or immunity, so long as Congress has not foreclosed use of the remedy explicitly, or implicitly by imbuing the act in question with its own comprehensive remedial scheme. To answer the initial question of whether the law in question unambiguously confers an enforceable right, we must still apply the three part test set forth in *Wilder* by asking: (1) whether the statutory provision at issue was intended to benefit the putative plaintiff, (2) whether the provision creates a binding obligation on the state rather than a mere congressional preference, and (3) whether the asserted interest is not so amorphous as to be "beyond the competence of the judiciary to enforce." *Wilder,* 496 U.S. at 509, 110 S.Ct. at 2517. If, after applying this test, a court concludes that an enforceable right has been unambiguously created, then the plaintiff may proceed with his section 1983 action unless it has been explicitly or implicitly foreclosed by Congress. Implicit foreclosure exists when a remedial scheme inherent in the federal statute itself is so comprehensive as to leave no room for additional private remedies under

section 1983. *See Suter*, 503 U.S. at 360 n. 11, 112 S.Ct. at 1368 n. 11; *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

With this analytic framework clearly before us, we now turn to the particular issue in the present case. The Federal Aid in Sport Fish Restoration Act has, as its stated purposes, "the restoration, conservation, management, and enhancement of sport fish, and the provision for public use and benefits from these resources." 50 C.F.R. § 80.5(b). One aspect of this plan is to increase access for recreational boating and fishing. To this effect, the Act's enabling regulations require that at least ten percent of all funds distributed under the Act be allocated for recreational boating access facilities. 50 C.F.R. § 80.24. That regulation specifically states that "[a]ll facilities constructed … must be for the purpose of providing additional, improved, or safer access of public waters for boating recreation." The regulation goes on to make clear that although "a broad range of access facilities and associated amenities can qualify for funding under the 10 percent provision, *power boats with common horsepower ratings must be accommodated*." *Id.* (emphasis added). Thus, a state may place horsepower limitations on boats using these facilities and surrounding waters. But, if the power boat is within the permissible horsepower range, the state must not discriminate among those power boats with common horsepower ratings.

Patrick Buckley and the PWIA assert that this provision of the Act creates a right enforceable under section 1983. The district court disagreed and dismissed their action for failure to state a claim. Applying the three-part test, it is clear that the Act confers a right enforceable under section 1983.

■ First, the Act clearly is intended to benefit the plaintiffs. The Act's regulations unambiguously state a purpose to increase access to waterways for recreational boaters and fishermen. Buckley and the PWIA have alleged an interest as recreational boaters and fishermen sufficient to establish standing to bring a section 1983 action under the Act.

It is also clear that the Act creates a binding obligation on the state. In exchange for receiving funds under the Act, the state expressly promised to abide by the terms and regulations set forth in the legislation. 50 C.F.R. §§ 80.3, 80.21. The state's obligation is in the nature of a contract and is clearly binding. *See Pennhurst*, 451 U.S. at 17, 101 S.Ct. at 1539 (noting Congress's power to impose conditions when disbursing federal money to the States); *see also Suter*, 503 U.S. at 356, 112 S.Ct. at 1366. Finally, we do not think the asserted right is so amorphous as to be beyond our competence to enforce. To the extent the state permits access to one motorboat of a certain horsepower rating, it must also permit access to other motorboats of common horsepower ratings. Thus, we conclude that the Act unambiguously creates a right enforceable under section 1983.

■ Because the Act unambiguously creates an enforceable right, Buckley and the PWIA may bring their section 1983 action unless such an action was expressly or implicitly foreclosed by Congress. Nothing in the Act suggests that Congress expressly intended to foreclose the section 1983 remedy. Nevertheless, the City argues that Congress impliedly foreclosed this remedy by providing a comprehensive remedial scheme within the Act itself. The City directs us to 50 C.F.R. § 80.21, which states that "[t]he Secretary shall have the right to review or inspect for compliance at any time. Upon determination of noncompliance, the Secretary may terminate or suspend those projects in noncompliance, or may declare the state ineligible for further participation in program benefits until compliance is achieved." This provision is similar to provisions of other acts that have been found not to be comprehensive for purposes of foreclosing a section 1983 action. In *Suter*, for example, the Adoption Assistance Act had a similar enforcement mechanism. The Court held that while this provision was sufficient to keep the requirements of the Act from becoming a "dead letter," it was not a "comprehensive remedial scheme" that would preclude a section 1983 action to enforce an unambiguous federal right. *Suter*, 503 U.S. at 360–61, 112 S.Ct. at 1368–69. To preclude

enforcement under section 1983, the Act's remedial scheme must be so comprehensive as to leave no room for additional private remedies. *See id.* at 360 n. 11, 112 S.Ct. at 1368 n. 11. We conclude, therefore, that the Act does not foreclose Buckley and the PWIA from seeking redress via 42 U.S.C. § 1983.

■ The City argues that even if the Act permits enforcement via section 1983, Buckley and the PWIA have failed to state a claim because they cannot show that the City is not in compliance. The City argues that 50 C.F.R. § 80.24 merely requires that facilities built with funds disbursed under the Act be physically capable of accommodating boats of common horsepower ratings. Because the South Bonnyview boat launch facility can physically accommodate personal watercraft, the City argues it has complied with the Act, regardless of the fact that the waterway in question is restricted and offers no practical accommodation to these vessels. We reject such a hypertechnical reading of the Act. The language of the regulation can just as easily be read to require both the facility and the waterway in question to meet the Act's requirements. Considered in the context of the Act's language as a whole, it is abundantly clear that Congress intended to have facilities such as the South Bonnyview boat launch facility accommodate motorboats of common horsepower in an effort to increase access to recreational waterways. The City's reading of the Act would allow it to receive the benefit of its bargain with Congress, i.e., receiving funding to subsidize construction of a boat launch facility, while avoiding its obligations under the Act. Such a reading would frustrate the purpose of the legislative enactment. The state would have another boat launch facility, but a class of intended beneficiaries under the Act would be deprived of its use.

The State applied for funds under the Act in 1988. As part of the application process it assented to the Act's terms. The City agreed to operate the facility knowing that the funds came from the Federal Aid in Sport Fish Restoration Act. In 1990, the City passed an ordinance restricting personal watercraft from using the waterway that was to benefit from the federal funding. In such a case, the City's restriction of the waterway is tantamount to restriction of the facility. To argue otherwise is simply disingenuous. Where two equally plausible readings of a federal statute conflict, we will adopt the one that most closely comports with Congress's intentions.

### CONCLUSION

Because the Federal Aid in Sport Fish Restoration Act confers a right enforceable through section 1983, the district court erred in dismissing Buckley's and PWIA's suit for failure to state a claim. Accordingly, we reverse the district court's dismissal of this section 1983 action and remand for further proceedings in accordance with this opinion. All parties shall bear their own costs.

**REVERSED AND REMANDED.**