ASSOCIATED GENERAL CONTRAC-
TORS, SAN DIEGO CHAPTER, INC.,
APPRENTICESHIP AND TRAINING
TRUST FUND, Plaintiff–Appellee,
Cross–Appellant,

v.

Owen SMITH, in his official capacity as a member of the California Apprentice-ship Council, et al., Defendants,

and

Gail W. Jesswein, in his official capacity as a member of the California Appren-ticeship Council; California Apprentice-ship Council, Defendants–Appellants, Cross–Appellees.

Nos. 92–55618, 92–55780.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 1995.

Decided Jan. 22, 1996.

Jack T. Kerry, Deputy Attorney General, Los Angeles, California; Julian O. Standen, Deputy Attorney General, San Francisco, California, for defendants-appellants-cross-appellees.

Mark T. Bennett and David P. Wolds, Merrill, Schultz & Wolds, San Diego, California, for plaintiffs-appellees-cross-appellants.

Before: BOOCHEVER, T.G. NELSON, and KLEINFELD, Circuit Judges.

BOOCHEVER, Circuit Judge:

California Apprenticeship Council ("CAC") denied the application of Associated General Contractors Apprenticeship and Training Trust Fund ("AGC") to expand its apprenticeship programs, because AGC had not demonstrated a need for the programs in the expanded area. AGC filed suit in district court, arguing that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1988), preempted application of the state law on which CAC based its denial. The district court granted summary judgment for AGC, and CAC appeals. AGC cross-appeals from the district court's denial of its request for attorney fees under 42 U.S.C. § 1988 (1988).

## FACTS

The state of California has created an administrative framework to regulate apprenticeship programs. The state's Department of Industrial Relations contains a Division of Apprenticeship Standards, which in turn includes CAC, which oversees and administers apprenticeship programs in the state. CAC exercises approval authority over apprenticeship programs under the federal Fitzgerald Act, 29 U.S.C. § 50 (1988), and its implementing regulations, 29 C.F.R. §§ 29.1–29.13. The Fitzgerald Act authorized the creation of labor standards necessary to safeguard the welfare of apprentices, to encourage the formation of apprenticeship programs, and to cooperate with state agencies engaged in setting standards for apprenticeship programs. 29 U.S.C. § 50.

The Associated General Contractors of America, San Diego Chapter, Inc., is a non-profit trade association composed of general contractors and specialty subcontractors, including non-union contractors. In 1988, this association created an Apprenticeship and Training Trust Fund (referred to here as "AGC"), which applied to CAC for approval of an apprenticeship program to train apprentices in the construction crafts in San Diego County. CAC approved the application.

Two years later, AGC applied for permission to expand its approved work areas into the counties surrounding San Diego County. In June 1991, the chief of CAC's Division of Apprenticeship Standards approved AGC's expansion application. Existing union apprenticeship programs in the expanded area appealed, and in October 1991, a CAC appeal panel reversed the earlier approval of the expanded program.

The CAC appeal panel based its reversal on the California Labor Code, which provides that apprenticeship "[p]rograms may be approved by the chief in any trade in the state or in a city or trade area, *whenever the apprentice training needs justifies [sic] the establishment.*" Cal.Labor Code § 3075 (emphasis added). The panel found that AGC had not demonstrated a local need for the program expansion.

AGC filed a complaint in federal district court for declaratory and injunctive relief, challenging the denial of its expansion application under ERISA, and under 42 U.S.C. § 1983, which "provides a cause of action for

'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (quoting the statute). AGC alleged that CAC's decision was preempted by ERISA, and that CAC violated 42 U.S.C. § 1983 by depriving AGC of its federal right to administer an employee benefit plan under ERISA without interference from state regulations. On April 14, 1992, the district court granted AGC's motion for summary judgment, stating that the application of Cal.Labor Code § 3075, requiring AGC to show the need for an expanded apprenticeship program, was preempted by ERISA. On May 21, 1992, the court denied AGC's application for attorney fees under 42 U.S.C. § 1988, finding that ERISA was AGC's exclusive remedy.

CAC promptly appealed the summary judgment, and AGC cross-appealed the denial of attorney fees.

### I. *CAC's application of California state apprenticeship law was preempted by ERISA*

■ This court reviews a grant of summary judgment de novo. *Dillingham Constr. N.A., Inc. v. County of Sonoma,* 57 F.3d 712, 716 (9th Cir.1995), *petition for cert. filed,* 64 U.S.L.W. 3380 (U.S. Nov. 16, 1995) (No. 95–789). Because the parties do not contest the facts, we need only decide whether the district court correctly applied the substantive law. *Hydrostorage, Inc. v. Northern Cal. Boilermakers Local Joint Apprenticeship Comm.,* 891 F.2d 719, 726 (9th Cir.1989), *cert. denied,* 498 U.S. 822, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).

*Dillingham* presented the issue whether ERISA preempted the state of California from applying its prevailing wage law to apprenticeship programs. The state law allowed public works contractors to pay less than the prevailing wage rates to apprentices only if the apprentices were part of a program approved under Cal.Labor Code § 1777.5. In deciding that application of the state prevailing wage laws was preempted, *Dillingham,* in combination with earlier

ERISA cases, effectively disposes of all CAC's ERISA-related arguments.

■ ERISA is a comprehensive remedial statute intended to protect the interest of employees in pension and welfare plans. *Hydrostorage,* 891 F.2d at 726. The statute contains a broad preemption clause, which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). ERISA also contains a built-in exception to preemption, a "savings clause," which states "[n]othing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d).

To determine whether ERISA preempts the application of state law in this case, we must conduct a three-part inquiry. First, we must determine whether the proposed expanded apprenticeship program was an employee benefit plan under ERISA. *Dillingham,* 57 F.3d at 717. Second, we must decide whether the state requirement of demonstrated "need" for the expanded program "related to" the employee benefit plan and thus was preempted. *Id.* Third, we must decide whether the "savings" clause exempts the state regulation from preemption. *Id.*

### A. *The apprenticeship program is an employee welfare benefit plan*

■ An apprenticeship program is an employee welfare benefit plan under ERISA, which specifically provides that the term "employee welfare benefit plan" includes "apprenticeship or other training programs." 29 U.S.C. § 1002(1). *See Dillingham,* 57 F.3d at 718; *Hydrostorage,* 891 F.2d at 728; *Electrical Joint Apprenticeship Comm. v. MacDonald,* 949 F.2d 270, 274 (9th Cir.1991), *cert. denied,* 505 U.S. 1204, 112 S.Ct. 2991, 120 L.Ed.2d 869 (1992); *National Elevator Indus., Inc., v. Calhoon,* 957 F.2d 1555, 1558 (10th Cir.), *cert. denied,* 506 U.S. 953, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992); *Boise Cascade Corp. v. Peterson,* 939 F.2d 632, 637 (8th Cir.1991), *cert. denied,* 505 U.S. 1213, 112 S.Ct. 3014, 120 L.Ed.2d 887 (1992). AGC's program thus is an ERISA plan.

### B. *State laws relating to apprenticeship plans are preempted*

ERISA's broad preemption clause reaches all state laws that "relate to" an apprenticeship plan. Laws relate to such a plan if they have a connection with or reference to it. *Dillingham*, 57 F.3d at 718. In *Dillingham*, this court found that the application of California's prevailing wage law to apprenticeship programs related to an ERISA plan and fell under the preemption clause. *Id.* at 719; *Associated Builders & Contractors, Inc. v. Curry*, 68 F.3d 342, 343 (9th Cir.1995) (applying *Dillingham* ); *see also MacDonald*, 949 F.2d at 275 (action under Nevada prevailing wage law preempted); *Hydrostorage*, 891 F.2d at 730 (administrative order requiring company to comply with California law setting formal requirements for apprenticeship program preempted). The state law at issue in this case requires a local "apprentice training need" before a program can be approved. The enforcement by CAC of that requirement to bar AGC's expansion program certainly is connected to the ERISA apprenticeship plan, and therefore falls within the scope of the preemption clause.

### C. *CAC's application of Cal.Labor Code § 3075 is not "saved" from preemption by ERISA's savings clause*

CAC argues that its action is "saved" from preemption, because Cal.Labor Code § 3075 is a state law upon which federal law (in this case, the Fitzgerald Act) depends for its enforcement. CAC claims that the state standards, which are not in "active conflict" with the federal act, can still be enforced.

CAC's argument has been foreclosed. While the Fitzgerald Act itself is not preempted by ERISA, "any state regulation of apprenticeship programs that is separate and apart from the authorization given by the Fitzgerald Act and its accompanying regulations is preempted by ... ERISA." *MacDonald*, 949 F.2d at 274. There is no "need" requirement in the Fitzgerald Act, which regulates only eligibility for federal registration of apprenticeship programs.

[T]he Fitzgerald Act does not rely on state laws for enforcement and includes no clause 'preserving' nonconflicting state laws.... [E]ven if the application of the [state] law is in the furtherance of the objectives of the Fitzgerald Act, it is not an enforcement mechanism of federal law, and to the extent that its enforcement in this case is preempted by ERISA, federal law is not impaired.

*Dillingham*, 57 F.3d at 720–21 (citations omitted).

Further, we already have rejected CAC's argument that Congress intended the Fitzgerald Act to be a "cooperative venture" in which federal law simply sets broad limits on state regulation. *See Hydrostorage*, 891 F.2d at 732 (the Fitzgerald Act is not an exercise in "cooperative federalism").

We hold that the savings clause does not prevent preemption under ERISA of CAC's interpretation and application of Cal.Labor Code § 3075. *See Dillingham*, 57 F.3d at 721 (application of prevailing wage law preempted); *MacDonald*, 949 F.2d at 275 (no preemption of entire state law, only its interpretation and application in the case); *Hydrostorage*, 891 F.2d at 732 (declining to address whether entire statute is preempted).

### II. *The district court did not err in denying attorney fees to AGC under 42 U.S.C. § 1988*

AGC argues that it is entitled to attorney fees in this action not under ERISA, which in 29 U.S.C. § 1132(g) permits fee awards only to participants, beneficiaries, or fiduciaries, but as a "prevailing party" under 42 U.S.C. § 1988, which provides "[i]n any action or proceeding to enforce a provision of section[ ] ... 1983 ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." The district court denied AGC's motion for attorney fees in a separate ruling, stating the reasons in open court. The court found that ERISA was AGC's exclusive remedy; that even if there were a federal right for the purposes of 42 U.S.C. § 1983, the court would refuse to award fees, because ERISA was a comprehensive enforcement mechanism for the federal right alleged to

have been violated; and that even if AGC could successfully maintain a § 1983 action, the court would not exercise its discretion to make a fee award.

■■■ This court reviews de novo any elements of legal analysis and statutory interpretation involved in an attorney fees decision. *Corder v. Brown,* 25 F.3d 833, 836 (9th Cir.1994).

AGC characterizes this preemption case as one in which it is enforcing its federal right to be free of state regulation, a right which it claims is enforceable under § 1983. Under AGC's logic, any plaintiff who successfully argues that ERISA preempted a provision of state law would be entitled to fees under § 1988.

This court rejected a similar claim in *Dillingham.* The plaintiff in *Dillingham* argued that the state interfered with rights established by federal labor law in attempting to enforce the state prevailing wage laws, in violation of 42 U.S.C. § 1983. 57 F.3d at 716. The court summarily denied the plaintiff's motion for attorney fees under § 1988, holding "Dillingham is not entitled to attorney's fees under 42 U.S.C. § 1988 because Dillingham has shown no right under section 1983 in ERISA which it has sought to enforce." *Id.* at 722. *Dillingham* thus appears to reject the argument that a right under § 1983 is vindicated when a plaintiff prevails in an ERISA preemption case.

■■■ We also note that ERISA's express provision for preemption of state law operates by virtue of the Supremacy Clause, U.S. Const. Art. VI. *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995). "[P]reemption of state law under the Supremacy Clause—being grounded not on individual rights but instead on considerations of power—will not support an action under section 1983, and will not, therefore, support a claim for attorneys' fees under section 1988." *Segundo v. City of Rancho Mirage,* 813 F.2d 1387, 1394 (9th Cir.1987).

■■■ Further, even when a party requesting attorney fees shows a federal right that would otherwise be enforceable under § 1983, the opposing party may show that "Congress specifically foreclosed a remedy under § 1983 by providing a comprehensive enforcement mechanis[m] for protection of a federal right." *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448–49, 107 L.Ed.2d 420 (1989) (quotations and citations omitted). As the district court pointed out, ERISA provides for attorney fees under limited circumstances in 29 U.S.C. § 1132(g), and then only to participants, beneficiaries, and fiduciaries. To award fees under § 1988 in an ERISA preemption case, to a party who is neither a participant, beneficiary, nor fiduciary, would allow fee awards in situations not specified by Congress. Had Congress intended to allow an award of ERISA attorney fees to any prevailing party, we believe it would not have limited the categories of those entitled to fees in the ERISA statutory scheme.

■■■ Finally, ERISA is an "interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a comprehensive and reticulated statute." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (quotations omitted); *see New York Conference,* —— U.S. at ——, 115 S.Ct. at 1674 (ERISA "establishes a comprehensive civil enforcement scheme"). This carefully integrated statute is evidence that Congress did not intend an award of attorney fees in cases such as this, which do not present any special circumstances justifying the application of §§ 1983 and 1988. *See Buckley v. City of Redding,* 66 F.3d 188, 191 (9th Cir. 1995) (as amended) ("Implicit foreclosure [of a § 1983 action] exists when a remedial scheme inherent in the federal statute itself is so comprehensive as to leave no room for additional private remedies under section 1983.").

We affirm the district court's denial of attorney fees under § 1983.

## CONCLUSION

We affirm the district court's grant of summary judgment to AGC, and we affirm its

denial of attorney fees. Each party shall bear its own costs on appeal.

AFFIRMED.